**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

PATRICIA CHAVEZ-RODRIGUEZ,

       Plaintiff,

vs.                               No. CIV 07-0633 JB/DJS

CITY OF SANTA FE, MAYOR DAVID COSS,
in His Official and Individual Capacity,
COUNCILOR KAREN HELDMEYER,
in Her Official and Individual Capacity,
JOHN B. "JACK" HIATT in His Official
and Individual Capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion and Memorandum in Support Thereof for Partial Summary Judgment on Count II (Due Process Rights Under the United States and New Mexico Constitutions) and for Qualified Immunity, filed August 11, 2008 (Doc. 150)("Motion"). The Court held a hearing on September 25, 2008. The primary issue is whether Plaintiff Patricia Chavez-Rodriguez' contention that the Defendants violated her right to due process by removing her from her job and attempting to transfer her to a different position can survive summary judgment. This issue ultimately turns on: (i) whether Chavez-Rodriguez had a protected property interest in her position as Director of Senior Services for the City of Santa Fe; (ii) whether Chavez-Rodriguez had a protected property interest in her sick leave and similar benefits; and (iii) whether there is a waiver of immunity allowing Chavez-Rodriguez to sue Santa Fe and its officials under the New Mexico Constitution. Because the Court concludes that Chavez-Rodriguez is not able to demonstrate any protected property interests, the Court will grant the motion in part and dismiss her federal due-process claim. The Court will not decide whether there is a waiver of

immunity for suits arising under the New Mexico Constitution's due process clause until after the Court decides her other federal claims.

**FACTUAL BACKGROUND**

Chavez-Rodriguez alleges that several high-ranking Santa Fe city officials retaliated against her for opposing what she believed was the City of Santa Fe's mismanagement of federal and state funds.  She alleges that the Defendants harassed her and ultimately removed her from her upper-level position as Director of Senior Services and transferred her to an entry-level position at the Genoveva Chavez Community Center.  Chavez-Rodriguez never started worked at that new job, but went on sick leave and soon initiated grievance proceedings over the transfer.  She was reinstated as Director and continues to hold that position today.

Chavez-Rodriguez became the Director of Senior Services in the City of Santa Fe's Community Services Department in May of 2004.  See Motion ¶ 3, at 4.  She was a classified employee.  See Motion ¶ 1, at 3.  She alleges that she has been a city employee for many years, having been hired on November 5, 1984, as a Senior Citizens Outreach Coordinator.  See Exhibit A to Notice of Removal, Complaint to Recover Damages for Violations of Rights Guaranteed by the United States Constitution and the New Mexico Constitution, Assault, Punitive Damages, Attorney's Fees and Costs ¶ 7, at 2, filed July 2, 2007 (Doc. 1-2)("Complaint").  Not long after her promotion to Director, she began protesting what she believed were illegal transfers of state and federal funds by city officials.  See Defendants' Motion and Memorandum in Support of Partial Summary Judgment on First Amendment Retaliation (Count I) ¶¶ 7-13, at 3-4, filed August 11, 2008 (Doc. 151).

Chavez-Rodriguez alleges that several individuals retaliated against her as a result of her opposition to the transfers, culminating in her being removed from her position.  See Complaint ¶¶

10-39, at 3-10.  That removal is the central event at issue here, and the parties disagree as to exactly what happened and how it should be interpreted.

According to Chavez-Rodriguez, she was removed from her position as Director of Senior Services without any prior notice and without receiving anything in writing.  See Exhibit 3 to Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment on Count II (Due Process Rights Under the United States and New Mexico Constitutions) and for Qualified Immunity, filed August 27, 2008 (Doc. 163)("Response"), Volume II of Deposition of Patricia Chavez-Rodriguez at 227:15-22, taken March 13, 2008 (Doc. 163-2)("Second Chavez-Rodriguez Dep.").  Instead, she received only a 37-second phone call on a Friday afternoon telling her to pack all her belongings.  See Second Chavez-Rodriguez Dep. at 248:9-16.  The move was "clearly a job setback," as she was going from being a "division director with over 100 employees" to being a coordinator with no supervisory responsibilities and no budget.  Id. at 228:1-15.  The move, according to Ruben Lovato, would not, however, involve a reduction in salary.  See Exhibit 2 to Response, Deposition of Ruben Lovato at 50:2-16, taken December 6, 2007 (Doc. 163-2)("Lovato Dep.").

Chavez-Rodriguez stated that Lovato, her immediate supervisor, had threatened her with transfer for providing information to the City Council.  See Exhibit 4 to Response, Volume I of Deposition of Patricia Chavez-Rodriguez at 121:4-14, taken March 4, 2008 (Doc. 163-2)("First Chavez-Rodriguez Dep.").  She believed that Defendants David Coss, the Mayor of Santa Fe, Karen Heldmeyer, a former Santa Fe City Councilor, and John "Jack" Hiatt, the Deputy City Manager, see Exhibit 5 to Response (listing positions); all wanted her "out of there" because she had talked with the City Council about her belief that the City was mismanaging funds.  First Chavez-Rodriguez Dep. at 121:4-20.  Heldmeyer wanted her stripped of her authority and "placed in a hole

somewhere." <u>Id.</u> at 105:19-21.  Lovato had told her that Coss wanted her fired.  <u>See</u> Second Chavez-Rodriguez Dep. at 260:16-261:7.  Chavez-Rodriguez had also recorded a conversation of hers with Lovato in which Lovato said the Heldmeyer wanted her out.  <u>See</u> Lovato Dep. at 69:11-70:18.

After receiving the Friday telephone call informing her that she was being removed from her position, Chavez-Rodriguez went on sick leave, because she was ill.  <u>See</u> Exhibit 9 to Response, Affidavit of Patricia Chavez-Rodriguez ¶ 3, at 1, executed August 27, 2008 (Doc. 163-3)("Chavez-Rodriguez Aff.").  Once her sick leave was exhausted she used her annual leave instead.  <u>See</u> <u>id.</u>

While she was on sick leave, Chavez-Rodriguez initiated a grievance proceeding over being removed from her job as Director.  <u>See</u> Exhibit 1 to Motion, Affidavit of Galen M. Buller ¶ 13, at 2-3, executed April 3, 2008 (Doc. 150-2)("Buller Aff."); Exhibit A to Motion, Grievance Letter from Patricia Chavez-Rodriguez to Ruben Lovato, dated January 29, 2007 (Doc. 150-2).  Chavez-Rodriguez' attorney, Daniel O'Friel, began negotiating with the City over her reinstatement.  <u>See</u> Buller Aff. ¶¶ 14-15, at 3.  At Mr. O'Friel's request, Acting City Manager Galen Buller converted the leave Chavez-Rodriguez took between February 12, 2007 and February 23, 2007 from sick leave to paid administrative leave, and later extended her administrative leave until March 5, 2007.  <u>See</u> <u>id.</u> ¶¶ 16, 20, at 3.  Buller did not convert or reinstate the sick leave Chavez-Rodriguez took from January 23, 2007 to February 12, 2007, because she had "previously requested, and been granted, sick leave for those days through proper procedures."  Exhibit B to Motion, Letter from Galen Buller to Daniel J. O'Friel, dated February 8, 2007 (Doc.150-2).  The grievance proceedings were stayed while Chavez-Rodriguez' counsel attempted to negotiate a settlement of the grievance, and ultimately, she was reinstated to her old position.  <u>See</u> Buller Aff. ¶¶ 17, 19, at 3; Exhibit C to Motion, Memo from Galen Buller to Patricia Rodriguez, dated February 20, 2007 (Doc. 150-2).

Although Chavez-Rodriguez was originally to resume her duties on February 26, 2007, at her request, Buller extended her administrative leave by another week, and she returned to work on March 5, 2007.  See Buller Aff. ¶ 20, at 3.  Chavez-Rodriguez received a paycheck the entire time, as she was on leave, and she remains the Director of Senior Services to the present day.  See id. ¶¶ 22-23, at 4; Exhibit 4 to Motion, Plaintiff's, Patricia Chavez-Rodriguez Response to Defendants' First Request for Admissions ¶¶ 4-6, at 2; Transcript of Hearing at 124:21-23 (O'Friel), taken September 25, 2008 ("Tr.").[1]

Chavez-Rodriguez has indicated that she was actually fired, or at least removed from her position, and not properly transferred.  See Chavez-Rodriguez Aff. ¶ 2, at 1 (stating that using sick and annual leave only way to keep paycheck after removal); Plaintiff's, Patricia Chavez-Rodriguez First Amended Answer to Interrogatories at No. 6, 1-2 (claiming six and a half "weeks of lost earnings related to my having being fired as Director of Senior Services on January 19, 2007 and reinstated on March 5, 2007").

The Defendants' version of events is slightly different.  Much of the dispute, however, with the exception of the reasons for the transfer, is about the characterization of the events, rather than the underlying facts.  The Defendants maintain that Hiatt initiated Chavez-Rodriguez' transfer, because he was concerned about her behavior and felt a transfer was in the City's best interests.  See Exhibit 2 to Motion, Deposition of John B. "Jack" Hiatt at 29:20-25, 30:6-9, 31:13-18, 44:1-5, taken March 14, 2008 (Doc. 150-2)("Hiatt Dep.").  Buller states that, a few weeks after becoming Acting City Manager, he was made aware of personnel issues regarding Chavez-Rodriguez and that Hiatt was addressing them.  See Buller Aff. ¶¶ 6-7, at 2.  The Defendants also maintain that Chavez-

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Rodriguez had been aware of the potential transfer well in advance of the Friday telephone call from Hiatt.  See Exhibit 9 to Reply, Volume III of Deposition of Patricia Chavez-Rodriguez at 209:20-210:5, 210:11-211:2, taken July 23, 2008 (Doc. 178-2).

The Defendants also argue that her transfer was not a demotion under the City's rules. According to the Defendants, Chavez-Rodriguez was never transferred – she was notified of the transfer, but it was never formally completed.  See Exhibit 3 to Motion, Affidavit of Galen M. Buller ¶ 8, at 2, executed April 15, 2008 (Doc. 150-2)("Second Buller Aff.").  The Defendants also maintain that Chavez-Rodriguez was never fired.  See Buller Aff. ¶ 11, at 2.

## PROCEDURAL BACKGROUND

Chavez-Rodriguez initiated her lawsuit against the City of Santa Fe, Coss, Heldmeyer, and Hiatt (collectively, "Defendants") in New Mexico state court.  The Defendants removed her action to federal court on the basis of federal-question jurisdiction.  See Notice of Removal ¶ 5, at 2, filed July 2, 2007 (Doc. 1).  The Defendants now move for summary judgment on Count II of Chavez-Rodriguez' Complaint.

Count II asserts a claim under the United States and New Mexico Constitutions, alleging that the Defendants deprived Chavez-Rodriguez of her right to due process.  See Complaint ¶¶ 46-47, at 11.  The Defendants argue that Chavez-Rodriguez did not have a protected property interest in her job.  The Defendants maintain that, under New Mexico law and Santa Fe's city regulations, a government employee possesses a property interest only in the compensation due him or her, and not in retaining a particular position.  See Motion at 7 (citing Bd. of Education of Carlsbad v. Harrell, 118 N.M. 470, 882 P.2d 511 (1994)).  They argue that Chavez-Rodriguez admitted that her salary and benefits were never interrupted as a result of any action taken by the Defendants, see id. at 8 (citing requests for admissions), and that although a transfer was proposed, she was never

transferred or removed from her position as Director of Senior Services, id. (citing depositions and affidavits).  Because she does not have a protected property interest, the Defendants contend that neither her rights to substantive nor procedural due process were violated.

The Defendants also argue that, even if the Court were to find that Chavez-Rodriguez had a protected property interest, she received an appropriate level of process and was never subjected to any actions severe enough to shock the conscience.  The Defendants emphasize that procedural due process does not guarantee a person any particular outcome, but only provides for an opportunity to be heard.  See id. at 9.  They contend that Chavez-Rodriguez received such an opportunity because she was granted paid leave after being informed of her imminent transfer. See id. at 9-10.  While on leave, she exercised her grievance rights under Santa Fe's personnel policies, and she was ultimately allowed to remain Director of Senior Services.  See id. at 10.  The Defendants also argue that, to the extent that Chavez-Rodriguez grounds her due-process claim in any violation of city policies and procedures, the claim is without merit, because such violations do not automatically amount to a constitutional violation.  See id. at 10-11.

With regards to substantive due process, the Defendants assert that the United States Court of Appeals for the Tenth Circuit and the United States District Court of the District of New Mexico have generally held that it does not apply to public employment, or have at least been skeptical about reaching such a conclusion.  See id. at 11-12.  Moreover, they argue that none of the conduct that Chavez-Rodriguez alleges happened is egregious enough to shock the conscience and thus be a violation of substantive due process.  See id. at 12-13.

The Defendants then turn to Chavez-Rodriguez' state constitutional claim and contend that sovereign immunity bars it, absent a waiver under the New Mexico Tort Claims Act ("NMTCA"). See id. at 14.  They argue that there is no such waiver alleged in the Complaint and that the

Complaint has therefore failed to state a claim on this ground.  See id.

Finally, the individual Defendants raise a defense of qualified immunity.  They argue that, regardless whether the Court finds a violation of procedural or substantive due process, they are shielded from liability because their actions did not "'violate clearly established statutory or constitutional rights which a reasonable person would have known.'"  Id. at 15 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In response to these arguments, Chavez-Rodriguez first contends that she has a protected property interest in her employment.  See Response at 9.  According to her, the Defendants' reliance on Bd. of Education of Carlsbad v. Harrell is misplaced, because it was a case about a superintendent's temporary suspension with pay, and Harrell's due-process claim challenged not his suspension but mandatory arbitration that followed it.  See id. at 9-10.  More on point, she asserts, is Lovato v. City of Albuquerque, 106 N.M. 287, 742 P.2d 499 (1987), which she reads as holding that classified employees in New Mexico have property interests in their particular positions.  See id. at 11.  Chavez-Rodriguez supports her stance with an affidavit from Debbie Blea, a former Acting Human Resources Director for the City of Santa Fe.  Blea's affidavit states that Chavez-Rodriguez was entitled to notice and a hearing, which she did not receive, and that "the lack of paperwork for [her] demotion was highly unusual."  Id. (citing Exhibit 1 to Response, Affidavit of Debbie Blea ¶¶ 15, 17-18, at 3-4, taken April 2, 2008 (Doc. 163-2)("Blea Aff.")).  Chavez-Rodriguez also asserts that both she and Lovato considered her transfer to be a demotion.  See id. at 12 (citing affidavits).

Chavez-Rodriguez states that she was forced to deplete her sick leave, vacation time, and administrative leave to continue receiving paychecks while she contested her transfer through the grievance process.  See id. at 12-13.  This use of leave and vacation amounted to a deprivation, she

-8-

argues, because they were benefits of her employment that she could have used for other purposes. See id. at 12.

Chavez-Rodriguez next challenges the Defendants' arguments that she received appropriate process. She argues that she was entitled to a pre-deprivation hearing, but instead received only a peremptory order to clean out her desk and report to the Genoveva Chavez Community Center for her new job. See id. at 13-14. According to Chavez-Rodriguez, "[s]ome explanation of the charges, some explanation of the evidence against her, and some opportunity to present her side of the story, is due a classified employee before she is demoted." Id. at 17.

Chavez-Rodriguez argues that, contrary to the Defendants' contentions, substantive due process applies to property interests in public employment and that the standard applied is not the shocks-the-conscience test. Rather, she maintains, the Tenth Circuit case law prevents arbitrary or irrational conduct. See id. She argues that the Defendants' actions were retaliatory and therefore arbitrary. At a minimum, she asserts, there is a genuine issue of material fact on that point, and thus a jury should hear the claim, rather than the Court disposing of the issue through summary judgment. See id. at 18.

Chavez-Rodriguez also briefly addresses the Defendants' final two arguments. She maintains that the Defendants cite to an inapposite New Mexico Court of Appeals case, Ford v. New Mexico Dep't of Public Safety, 119 N.M. 405, 891 P.2d 546 (Ct. App. 1994), for the proposition that she has not stated a viable claim for relief under the New Mexico Constitution. That case, she states, dealt with claim preclusion and only made a passing reference to actions for damages under state-constitutional provisions. See id. at 18-19.[2] Finally, she argues that the Defendants cannot

_____

[2] Chavez-Rodriguez states that the "Defendants' claim that there is no remedy provided in New Mexico law for violations of the free speech clause of our state Constitution is in error." Id.

invoke the qualified-immunity doctrine because her "property right in her employment with the City of Santa Fe was well established as of January 19, 2007, when she was summarily demoted by Defendants." Id. at 19.

The Defendants replied to Chavez-Rodriguez' Response on September 10, 2008. See Reply to Plaintiff's Response in Opposition [Doc. 163] to Defendants' Motion for Partial Summary Judgment on Count II (Due Process Rights Under the United States and New Mexico Constitutions) and for Qualified Immunity [Doc. 150], filed September 10, 2008 (Doc. 178)("Reply")(brackets in original).  The Defendants submitted "additional statements of fact" made relevant by Chavez-Rodriguez' reliance on Lovato v. City of Albuquerque, including the contention that Chavez-Rodriguez had admitted that she would retain the same pay if the proposed transfer had gone through. Id. ¶ 15, at 3.  The Defendants argue that Chavez-Rodriguez cannot rely on her loss of sick or annual leave because they were not raised as a claim in her Complaint and she did not make "initial disclosures of damages as required by Rule 26(a)(1)(A)(iii)." Reply at 4.  They further argue that Chavez-Rodriguez did not use any annual leave, and that she took sick leave and administrative leave, according to her deposition, because she was ill.  See id. at 5.  Moreover, the Defendants contend that, even if the Court considers Chavez-Rodriguez' assertions about lost leave or early retirement time, they do not amount to protected property interests because they are "purely speculative." Id. at 10.

The Defendants reiterate their position that Chavez-Rodriguez did not have any protected property interest in occupying the specific position of Director of Senior Services and argue that,

---

at 18.  Although she references the free-speech clause, given the context, the Court assumes this argument to be addressing whether the New Mexico due-process clause provides for a private remedy.

even if she did, she would not have suffered a deprivation because a transfer was proposed, but never actually occurred.  See id. at 8.  "She was removed from her position on January 19, 2007 by Assistant City Manager, Jack Hiatt."  Id.  According to the Defendants, she went on sick leave for five work days and then filed a grievance under Santa Fe city rules, and then seven work days later requested the grievance proceedings be stayed to facilitate settlement negotiations.  See id. at 8-9. The City Manager ultimately granted her grievance, and she returned to her old position.  In sum, the Defendants argue that Chavez-Rodriguez "was absent from her position for thirty work days, all of them paid leave days at her request, and returned to her exact same position."  Id. at 9.

The Defendants also contend that Chavez-Rodriguez' Response did not provide any legal authority to support a cause of action under the New Mexico Constitution, and noted that the Court has previously held that damages claims against the government arising from a violation of the state constitution must fit within a waiver of immunity under the NMTCA.  See id. at 10-11 (citing Bell v. Bd. of Education of the Albuquerque Public Schools, 2008 WL 2397670, *7 (D.N.M.)(Browning, J.)).

Finally, the Defendants argue that the individual Defendants are entitled to qualified immunity, while the City of Santa Fe is entitled to summary judgment because of a lack of evidence regarding municipal liability.  The Defendants maintain that Chavez-Rodriguez has done nothing more than make conclusory assertions, which is not sufficient as she "bears the burden of convincing the Court that the law allegedly violated by Defendants was clearly established."  Id. at 11.  The Defendants also maintain that Chavez-Rodriguez "has stated no basis upon which to base municipal liability of the City of Santa Fe for any alleged actions or non-actions of the individually named Defendants."  Id. at 12.

The Defendants also filed a motion to strike various affidavits that Chavez-Rodriguez had

attached to her Response.  <u>See</u> Defendants' Motion to Strike Portions of Plaintiff's Response in

Opposition to Defendants' Motion for Partial Summary Judgment on Count II (Due Process) [Doc.

150] and Memorandum in Support Thereof, filed September 10, 2008 (Doc. 179)("Motion to

Strike")(brackets in original).  The Court has already disposed of this motion with an earlier Order,

<u>see</u> Order, filed October 8, 2008 (Doc. 211), in which the Court indicated that it would consider the

arguments raised in the motion when addressing the relevant affidavits in the present motion.

### LAW REGARDING PROTECTED PROPERTY INTERESTS AND DUE PROCESS

The Fourteenth Amendment to the United States Constitution forbids a state from depriving

"any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, §

1.  The Due-Process Clause encompasses two distinct forms of protection: (i) procedural due

process, which requires a state to employ fair procedures when depriving a person of a protected

interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of

a protected interest for certain reasons.  <u>See</u>, <u>e.g.</u>, <u>County of Sacramento v. Lewis</u>, 523 U.S. 833,

845-46 (1998).  Under either form of protection, however, a person must have a protected interest

in either life, liberty, or property.

Constitutionally protected property interests include more than traditional forms of property

such as real estate or personal goods.  The Due-Process Clause can protect more abstract interests,

but they must meet certain requirements.  As the Supreme Court has said: "'To have a property

interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than

a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'"  <u>Town</u>

<u>of Castle Rock, Colorado v. Gonzales</u>, 545 U.S. 748, 756 (2005)(quoting <u>Board of Regents of State</u>

<u>Colleges v. Roth</u>, 408 U.S. 564, 577 (1972)).  A person can have a property interest in public

employment that the Constitution will recognize and protect.  <u>See</u>, <u>e.g.</u>, <u>Bishop v. Wood</u>, 426 U.S.

-12-

341, 344 (1976); Lovato v. City of Albuquerque, 106 N.M. at 290, 742 P.2d at 502.

While federal constitutional law defines the scope of protection that the Due-Process Clause affords a person's property interests, other independent sources, such as state law, define the nature and existence of the property interest.  See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. at 756.  The Supreme Court of New Mexico has stated: "The definition of property centers on the concept of entitlement; therefore, interests in government benefits will be recognized as constitutional 'property' if the person can be deemed 'entitled' to them."  Bd. of Education of Carlsbad v. Harrell, 118 N.M. at 477, 882 P.2d at 518 (citation omitted).

In considering whether suspending a superintendent with pay but without prior notice or hearing constituted a due-process violation, the Supreme Court of New Mexico went on to say:

> [The superintendent's contract] afforded him only the right to be fully compensated; he had no right to occupy the office of superintendent. See Royster v. Board of Trustees, 774 F.2d 618, 621 (4th Cir.1985) (holding that property interest in continued expectation of public employment does not include right to actually occupy position), cert. denied, 475 U.S. 1121, 106 S.Ct. 1638, 90 L.Ed.2d 184 (1986). Therefore, his claim of entitlement to employment was satisfied so long as he continued to receive the full compensation due under his contract. As the Tenth Circuit Court of Appeals has noted, "suspension with pay [does] not invade any recognized property interest." Pitts v. Board of Educ., 869 F.2d 555, 556 (10th Cir.1989); see also Black v. Board of Educ., 87 N.M. 45, 46, 529 P.2d 271, 272 (1974) (holding that suspended school superintendent was not entitled to due process guarantees afforded discharged certified school personnel). Because the Board did not deprive Harrell of any property interest by suspending him with pay, he was not entitled to due process protections prior to suspension.

Bd. of Education of Carlsbad v. Harrell, 118 N.M. at 477-78, 882 P.2d at 518-19.  The Supreme Court of New Mexico went on to apply Cleveland Bd. of Education v. Loudermill, 470 U.S. 532 (1985), in which "the Supreme Court held, using the Mathews balancing test, that a government employee with a protected property right to continued employment was entitled to a pretermination hearing, at which the employee had to receive 'notice of the charges against him, an explanation of

the employer's evidence, and an opportunity to present his side of the story.' Id. at 546." Bd. of Education of Carlsbad v. Harrell, 118 N.M. at 478, 882 P.2d at 519.  Applying Cleveland Bd. of Education v. Loudermill, the Supreme Court of New Mexico held that the procedures employed at a mandatory arbitration before Harrell's employment was terminated did not violate due process. See id.

Lovato v. City of Albuquerque involved Tony Lovato, who had "been a classified city employee, in various capacities, for twenty-seven years. A classified employee is one who is permanently employed by the City and entitled to all rights and benefits guaranteed by the merit system, one of which is recourse to the grievance procedure." Id., 106 N.M. at 288, 742 P.2d at 500. Lovato had been on temporary assignment since 1973, which "resulted in a five percent salary increase for Lovato." Id.  "On March 3, 1986, Lovato was removed from assignment status with a corresponding five percent reduction in pay." Id.  Albuquerque's city personnel rules provided that employees on assignment "'may be reassigned at any time at the discretion of their respective administrative head,' and that 'reassignment is not the subject of a grievance.'" Id. at 290 (citation omitted).  The Supreme Court of New Mexico found that "after a thirteen year employment in his assignment position, Lovato's employment at the position, grade, and pay rate prior to transfer could not be considered a temporary, discretionary advancement. . . .  Lovato's interest in continued employment in the same position clearly rose to the level of a constitutionally protected property interest." Id.

The Tenth Circuit, in Anglemyer v. Hamilton County Hospital, 58 F.3d 533 (10th Cir. 1995), after surveying the federal courts of appeals holdings in the area, stated:

> We believe the overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary. All of the courts of

appeals that have addressed this issue have reached an identical conclusion. See, e.g., Clark v. Township of Falls, 890 F.2d 611, 617-19 (3d Cir. 1989) (temporary six-week reassignment of police officer was not a constructive reduction in rank; therefore, no property interest was implicated under Pennsylvania law); Huang v. Bd. of Governors of Univ. of North Carolina, 902 F.2d 1134, 1141-44 (4th Cir. 1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (no property interest in a particular teaching assignment under Texas law); Garvie v. Jackson, 845 F.2d 647, 651-52 (6th Cir. 1988) (no property interest under Tennessee law in university department head position); Volk v. Coler, 845 F.2d 1422, 1430 (7th Cir. 1988) (no property interest in a particular employment position under Illinois law); Raposa v. Meade Sch. Dist. 46-1, 790 F.2d 1349, 1353 (8th Cir. 1986) (no property interest in a particular teaching assignment pursuant to South Dakota law); Lagos v. Modesto City Sch. Dist., 843 F.2d 347, 349-50 (9th Cir. [1988]) (tenured high school mathematics teacher had no property interest in his additional school position as baseball coach under California law), cert. denied, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988); Childers v. Independent Sch. Dist. No. 1, 676 F.2d 1338, 1340-41 (10th Cir. 1982) (high school teacher had no property interest in vocational-agriculture teaching assignment under Oklahoma law); Maples v. Martin, 858 F.2d 1546, 1550-51 (11th Cir. 1988) (job transfer or reassignment did not implicate a property interest under Alabama law). These cases indicate that an administrative decision to reassign or transfer a particular employee absent a statutory or contractual provision to the contrary is left to the "unfettered discretion" of the employer. Roth, 408 U.S. at 567, 92 S.Ct. at 2704.

Anglemyer v. Hamilton County Hospital, 58 F.3d at 539. The Tenth Circuit went on, however, to note that

> The cases we have catalogued are split on the relevance of a loss of rank, status, or salary as a result of the reassignment or transfer. Compare, e.g., Childers, 676 F.2d at 1341 (salary decrease and loss of other benefits irrelevant under Oklahoma law) with Clark, 890 F.2d at 617-19 (holding no reduction in rank occurred which was relevant under Pennsylvania law).

Anglemyer v. Hamilton County Hospital, 58 F.3d at 539.

The Tenth Circuit has also noted that "psychological care costs" incurred as a result of trauma, and the depletion of "savings and pension funds because of living expenses, attorney's fees, and costs" are "incidental losses" and "do not give rise to an independent protected property interest." Workman v. Jordan, 32 F.3d 475, 480 n.4 (10th Cir. 1994). The Tenth Circuit went on:

"Our authority to award these damages to a successful § 1983 plaintiff is of no matter."  Id.

### THE NMTCA AND THE NEW MEXICO CONSTITUTION

> In Hicks v. State, 88 N.M. 588, 544 P.2d 1153 (1975), [the Supreme] Court [of New Mexico] abolished the common law doctrine of sovereign immunity, thus permitting tort actions to be maintained against governmental agencies. The Legislature responded in 1976 by enacting the [New Mexico Tort Claims] Act, 1976 N.M.Laws, ch. 58 § 1 (Sections 41-4-2 through 41-4-27, N.M.S.A.1978), to retain governmental immunity except in eight enumerated classes of activity. Methola v. County of Eddy, 95 N.M. 329, 622 P.2d 234 (1980); Garcia v. Albuquerque Public Schools Bd., 95 N.M. 391, 622 P.2d 699 (Ct.App.1980), cert. quashed, (January 27, 1981).

Cole v. City of Las Cruces, 99 N.M. 302, 303, 657 P.2d 629, 630 (1984).

The NMTCA provides a general grant of immunity from tort claims against government entities and public employees, unless a particular exception applies.  See   N.M.S.A.1978 § 41-4-4(A).  The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M.S.A.1978 § 41-4-17(A).

A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions to the immunity granted to governmental entities and public employees in the NMTCA.  See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct.App. 1985), rev'd sub nom. on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986). If sovereign immunity has been waived under the NMTCA, then "the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee."  Id. However, "[c]onsent to be sued may not be implied but must come within one of the exceptions to immunity under the Tort Claims Act."  Begay v. State, 104 N.M. at 486, 487, 723 P.2d at 255, 256

-16-

(internal quotations omitted). Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint must be dismissed. See id.

A plaintiff may not sue a governmental entity for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." Barreras v. N.M. Corr. Dep't, 2003-NMCA-027 ¶ 24, 133 N.M. 313, 319, 62 P.3d 770, 776. See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11, 124 N.M. 479, 482, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution unless immunity is waived under the NMTCA); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution and also noting that the damages recoverable, if any, were not pertinent to the appeal); Rubio v. Carlsbad Municipal Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct.App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board).

The NMTCA grants immunity from tort liability to public employees acting in the scope of their duties. See Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1316 (1996); N.M.S.A. 1978 § 41-4-4A. The NMTCA also grants immunity to cities. See Cole v. City of Las Cruces, 99 N.M. at 304-05, 657 P.2d at 631-32. Section 41-4-3B of the NMTCA defines "governmental entities" as including "local public bodies," which are in turn defined by § 41-4-3C as including "all political subdivisions of the state and their agencies."

<u>ANALYSIS</u>

The central question presented by this motion is whether Chavez-Rodriguez is entitled to have her claim that she was deprived of due process go to a jury.  To show a due-process violation, she must first show that the interest she is alleging was invaded is a protected interest – in this case a protected property interest.  Because she cannot meet this threshold requirement, the Defendants are entitled to summary judgment on her federal claims.

**I.     CHAVEZ-RODRIGUEZ IS UNABLE TO ESTABLISH ANY PROTECTED PROPERTY INTEREST ON WHICH TO BASE A DUE-PROCESS CLAIM.**

The Due-Process Clause protects against deprivation of "life, liberty, or property without due process of law."  U.S. CONST. amend. XIV, § 1.  Accordingly, there is no due-process violation unless a person has a protected interest in life, liberty, or, as relevant here, property.  See <u>Dill v. City of Edmond</u>, 155 F.3d 1193, 1206 (10th Cir. 1998).  Chavez-Rodriguez asserts two potential property interests: (i) the specific position of Director of Senior Services; and (ii) the leave benefits she used to continue receiving a salary while going through the grievance proceedings.  The Court concludes, however, that neither of these asserted interests are constitutionally protected property interests.  Chavez-Rodriguez, therefore, cannot show that her right to due process has been violated.

**A.     CHAVEZ-RODRIGUEZ DID NOT HAVE A PROTECTED PROPERTY INTEREST IN HER SPECIFIC POSITION.**

The Due-Process Clause is a source of protection for property, but not a source of property rights.  Federal constitutional law delineates the boundaries of due-process protection, but other laws create the interests that due process safeguards.   See <u>Town of Castle Rock, Colorado v. Gonzales</u>, 545 U.S. at 756.  Often, as here, it is state or local law that is the origin of the property interest.  Because Chavez-Rodriguez is claiming an entitlement to the position of Director of Senior Services for the City of Santa Fe, it is New Mexico law and Santa Fe's personnel regulations that govern

whether such a claim of entitlement can be recognized as a constitutionally protected property interest.  Under New Mexico law, a public employee's property interest in his or her job is generally limited to the pecuniary entitlements of the job, while under the City of Santa Fe personnel regulations, a classified employee has an interest in continued employment within a given department, but not in occupying a particular position.

The parties primarily rely on two Supreme Court of New Mexico cases for their positions, each side holding up one case as the definitive pronouncement on protected property interests in public employment in New Mexico.  Chavez-Rodriguez depends heavily on Lovato v. City of Albuquerque to support her argument that she has a protected property interest in being Director of Senior Services.  A close analysis of that case, however, reveals that it does not buttress her position.  The plaintiff in Lovato v. City of Albuquerque was an Albuquerque employee who had spent thirteen years on temporary assignment in a position that entailed a five percent pay raise from his old job.  See id., 106 N.M. at 288. 742 P.2d at 500.   When the City finally decided to end his extended temporary sojourn, Lovato lost that extra pay.  See id.  The Supreme Court of New Mexico held that, notwithstanding the fact that city rules labeled all assignment positions as temporary and gave administrative heads the discretion to reassign people, Lovato's expectancy had ripened into entitlement after such a long period of time.  See id. at 290.  Although the Supreme Court of New Mexico said that "Lovato's interest in continued employment in the same position clearly rose to the level of a constitutionally protected property interest," id., read in context, the additional salary associated with that position was clearly important to the ruling.  The Supreme Court of New Mexico specifically mentioned Lovato's grade and pay rate in his assigned position as part of Lovato's protected interest.  See id.

Chavez-Rodriguez' interpretation of Lovato v. City of Albuquerque's import is plausible,

but ultimately not persuasive, particularly in light of <u>Bd. of Education of Carlsbad v. Harrell</u>, the case the Defendants champion.  The Supreme Court of New Mexico decided <u>Bd. of Education of Carlsbad v. Harrell</u> seven years after deciding <u>Lovato v. City of Albuquerque</u> and held that a temporary suspension with no loss of pay was not a due-process violation because a public employee's only property interest in his or her job is in the income that comes with it.  <u>Bd. of Education of Carlsbad v. Harrell</u>, 118 N.M. at 477-78, 882 P.2d at 518-19.  Chavez-Rodriguez argues that <u>Bd. of Education of Carlsbad v. Harrell</u> is inapposite here, but the Court disagrees.  While <u>Lovato v. City of Albuquerque</u> involved a job transfer, like here, it also involved a reduction in salary, unlike the present case.  <u>Bd. of Education of Carlsbad v. Harrell</u>, although involving a suspension instead of a transfer, was, like here, a case without any reduction in pay.  The two cases thus seem to the Court to be more or less equally on point.  <u>Bd. of Education of Carlsbad v. Harrell</u> also involves, contrary to Chavez-Rodriguez' contention, <u>see</u> Response at 10; Tr. at 125:5-20 (O'Friel), a due-process challenge to the suspension, and not just to the arbitration that followed the Carlsbad Board's indicating its intent to terminate Harrell's employment.  <u>See</u> <u>Bd. of Education of Carlsbad v. Harrell</u>, 118 N.M. at 478, 882 P.2d at 518 ("Because the Board did not deprive Harrell of any property interest by suspending him with pay, he was not entitled to due process protections prior to suspension.").  <u>Bd. of Education of Carlsbad v. Harrell</u> holds that pay is the key feature of a property interest in continued public employment, and as such indicates that the salary reduction in <u>Lovato v. City of Albuquerque</u> should be understood not just as a factor in the Supreme Court of New Mexico's decision, but as a potentially dispositive element.

The two cases are in harmony.  Read together, they stand for the proposition that New Mexico recognizes a property interest in public employment, but that it is an interest tied to the financial benefits that flow from the position, and not in other aspects of a job, such as the title,

-20-

prestige, or level of power and responsibility accompanying a particular position.  These more intangible features can certainly be important – many people (such as federal judges) work the jobs they do not because of the money, but because of the job itself  – but importance is not the criterion for determining whether something is property.  Indeed, common sense suggests that a financial focus is appropriate in this context.  Most people would be comfortable with considering a paycheck property, but would likely find it odd to consider having a particular job to be a property right.

This conclusion is bolstered by cases from the federal appellate courts, which have generally not found a property interest in holding a particular position.  The Tenth Circuit has stated: "[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary. All of the courts of appeals that have addressed this issue have reached an identical conclusion."  Anglemyer v. Hamilton County Hospital, 58 F.3d at 539 (citing cases).  The Tenth Circuit also noted, however, that the cases were not unanimous on "the relevance of a loss of rank, status, or salary as a result of the reassignment or transfer."  Id.  Loss of salary, as opposed to the loss of rank or status, is not relevant here.  The one case that did find a loss of rank to be important was the United States Court of Appeals for the Third Circuit's decision in Clark v. Township of Falls.  Clark v. Township of Falls, though, involved the Pennsylvania Police Tenure Act, which expressly provided: "No person employed as a regular full time police officer in any police department of any township of the second class . . . shall be suspended, removed or reduced in rank except for [enumerated reasons]."  Clark v. Township of Falls, 890 F.2d at 617 (quoting 53 Pa.Cons.Stat.Ann. § 812 (Purdon 1972))(ellipsis in original).  There is no similar law or regulation at issue here that explicitly protects a city employee's occupation of a particular position.

The holdings of the Supreme Court of New Mexico and various federal courts of appeals,

however, are not the end of the story.  Although the parties devote considerable time to their dueling interpretations of Lovato v. City of Albuquerque and Bd. of Education of Carlsbad v. Harrell, those cases, along with the federal cases, are at best guideposts for the Court – none of them interpret the Santa Fe rules and regulations dealing with classified city employees.  It is these regulations that ultimately determine whether Chavez-Rodriguez has a property interest in her particular position. The Court's reading of the Santa Fe rules is informed by Lovato v. City of Albuquerque, Bd. of Education of Carlsbad v. Harrell, and the federal cases, but it is ultimately the text of the Santa Fe rules that is dispositive.  Those rules give classified employees a property interest in continued employment with the City – and indeed within a particular department – but do not create a property interest in any particular position.

The Santa Fe rules allow for intra-department transfers "if deemed in the best interest of the City."  Exhibit D to Motion, City of Santa Fe Personnel Rules and Regulations § 4.71(A) (Doc. 150-2)("Personnel Rules").  An employee's actions can be – although they need not be – irrelevant to such a determination.  Where an employee's position is dependent upon an interpretation of the City's best interests, it is difficult to see that as the entitlement of which the Supreme Court of the United States has spoken.  Additionally, the rules use the word "deemed," which carries a connotation of discretion on the part of the official making a transfer.  The City's best interests standard is too nebulous to be the basis of a property right.  It may give rise to an expectancy, but that is not enough.  See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. at 756 (holding that "unilateral expectation" is insufficient to create a property right).  An employee cannot have a legitimate entitlement to a particular position under an employment regime that allows personnel transfers "if deemed in the best interests of the City."

Chavez-Rodriguez argues that this interpretation of the personnel rules is erroneous, offering

Blea's affidavit in support of her conclusion.  The Defendants argue that not only is Blea's understanding of the rules incorrect, the Court should not even consider them because of procedural irregularities.  See Defendants' Motion to Strike Portions of Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment on Count II (Due Process) [Doc. 150] and Memorandum in Support Thereof at 2-6, filed September 10, 2008 (Doc. 179)("Motion to Strike")(brackets in original).  The Court believes that it can consider most of Blea's affidavit, so long as the Court gives it proper weight.

The Defendants contend that Blea is not qualified to give a legal opinion on the rules and has not been disclosed as an expert as rule 26(a)(2) of the Federal Rules of Civil Procedure requires. See  Motion to Strike at 2, 4.  At common law, municipal ordinances and similar laws were not subject to judicial notice, but the modern trend is towards courts taking judicial notice of such laws when provided with a copy of the text, and treating them as questions of law rather than questions of fact that must be pled and proved.  See McCormack on Evidence § 335, at 458-60 (6th ed. 2006).  Because the parties have provided the Court with copies of the relevant regulations, the Court will treat their interpretation as a question of law.[3]  The Court could consider the arguments about the regulations that Blea makes if counsel directly presented those arguments.  Accordingly, the Court does not see a problem in considering Blea's arguments, even if they are presented in an unusual format.  The Court will not, however, give any particular deference to her arguments – they

---

[3] Chavez-Rodriguez did not, as the Defendants note, provide a copy of the definition of transfer upon which Blea relies in her affidavit.  The Court was able to locate a copy of the definition in the exhibits attached to a separate motion.  See Exhibit A-2 to Plaintiff's, Patricia Chavez-Rodriguez, Motion and Memorandum for Summary Judgment that She Has Suffered a Materially-Adverse Employment Action, filed April 4, 2008 (Doc. 85)("Transfer Definition").  Because the Defendants had been served a copy of this motion before the present motion, and because the Court ultimately decides against Chavez-Rodriguez, the Court does not believe there is any prejudice to the Defendants in the Court's considering this definition.

are, like counsel's arguments, entitled to deference to the extent they are persuasive and correct.

The Court agrees with the Defendants that Blea's interpretation of the rules is not persuasive. There is, however, ambiguity in the rules. The transfer rule itself authorizes transfers in the "best interests of the City." Personnel Rules § 4.71(A). The definition of transfer, however, is "the movement of an employee from one position to another in the same classification with the same salary range without any break of service." Transfer Definition. The transfer rule, by contrast, includes the phrase "new classification," indicating that the transfer can be to a different classification. Personnel Rules § 4.71(A) ("The Department, with approval of the City Manager, may transfer an employee . . . provided the employee meets the minimum qualifications of the new classification."). Neither party has presented the Court with a definition of classification.

Despite the ambiguity, the interpretation of the regulations is a question of law the Court must decide. The transfer rule in § 4.71(A), allowing transfers to new classifications, and the definition of transfer, limiting transfers to within a single classification, seem irreconcilable at first. The definition of transfer, however, uses the phrase "the same classification with the same salary range without any break of service." Transfer Definition. The salary language indicates that the restriction on transfer is intended to prevent a transfer from being used to reduce a person's salary without a formal demotion. This interpretation is also in accord with the Supreme Court of New Mexico decisions emphasizing that financial stakes are the central element of a property interest in employment.

The Santa Fe City Manager has the authority to interpret inconsistencies in the personnel rules. See Santa Fe City Personnel Ordinance (Ord. 1983-44; SFCC 1981, § 2-2-7), Santa Fe City Code § 19-3.5 ("The city manager may issue interpretive memoranda necessary to interpret the provisions of this chapter."). See id. § 19-5.4 ("In the event of conflicting rules and regulations or

interpretations, or the absence thereof, the city manager may issue a ruling which will be in full

force and effect until a revision of the rules and regulations in conflict is instituted pursuant to the

terms of this chapter."). The parties have not presented any official interpretation or ruling by the

City Manager, but the City Manager's affidavit indicates that Directors can be transferred.  See

Buller Aff. ¶¶ 12-13, at 2-3.  The Defendants have also provided a transfer request seeking to

transfer a Director as an example that the City of Santa Fe uses the transfer rules to move Directors

to different positions.  See Exhibit A to Defendants' Reply to Plaintiff's Response in Opposition to

Defendants' Motion to Strike Portions of Plaintiff's Response in Opposition to Defendants' Motion

for Partial Summary Judgment on Count II (Due Process) (Doc. 197), Human Resources Action

Request (dated May 20, 2006), filed October 2, 2008 (Doc. 204).  The transfer request was approved

on May 20, 2006, which is a number of months before the City attempted to transfer Chavez-

Rodriguez.  See id.  It therefore supports the interpretation that, during the relevant times, Directors

could be transferred pursuant to § 4.71(A).

Although the rules are not clear, the Defendants' interpretation is the more reasonable one.

This interpretation is especially persuasive when viewed against the background of the New Mexico

and federal cases.[4] At best, Chavez-Rodriguez' interpretation is not an unreasonable one.  The Court,

however, is doing more than interpreting the personnel rules; it is determining whether they give rise

to a property right.  The personnel rules are too ambiguous to create the firm entitlement that would

be a protected property right under the Due-Process Clause.

Finally, Chavez-Rodriguez maintains that Blea is a fact witness, not an expert witness.  See

---

[4] The federal cases are not directly relevant to interpreting Santa Fe municipal rules, but they
stand for a general interpretative principle that the Constitution will not recognize a property interest
in a particular position absent clear language.

Plaintiff's Response in Opposition to Defendants' Motion to Strike Portions of Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment on Count II (Due Process) [Doc. 150] and Memorandum in Support Thereof [Doc. 179] at 6, filed September 24, 2008 ("Doc. 197)("Response to Motion to Strike")(brackets in original).  According to her, when the Defendants dispute Blea's statements, "they simply invite the Court to send the matter to the jury for its determination."  Id.  To the extent that Blea is making factual statements, Chavez-Rodriguez' principle is correct.  To the extent that she is arguing about the correct interpretation of the Santa Fe personnel rules, her proposal is incorrect – the determination of the law is a matter for the Court. The Defendants argue that, even if Blea is a fact witness, several of the statements Blea made are either not based on personal knowledge or are lay opinion that is not useful to any determination of facts.  See Motion to Strike at 5.  The Court does not need to decide that matter, however, because, even if the Court considers Blea's affidavit, it would still not allow Chavez-Rodriguez to demonstrate a protected property interest.  The factual assertions in Blea's affidavit largely concern alleged procedural irregularities in Chavez-Rodriguez' transfer, such as a complete lack of paperwork in connection with the transfer.  See Blea Aff. ¶ 17, at 4.  Procedural defects, however, cannot create or enlarge Chavez-Rodriguez' substantive property rights.  See Cleveland Bd. of Education v. Loudermill, 470 U.S. at 541 ("'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."); Workman v. Jordan, 32 F.3d at 480 (holding that "alleged procedural errors do not enlarge . . . property rights).  Without a property right, any procedural problems do not implicate the Due-Process Clause.

## B.   CHAVEZ-RODRIGUEZ DOES NOT HAVE A PROTECTED PROPERTY INTEREST IN HER JOB BENEFITS.

In addition to asserting a property interest in the position of Director of Senior Services,

Chavez-Rodriguez asserts a property interest in the leave time she used after being told of the impending transfer.  See Response at 12.  The Defendants argue that the Court should disregard this claim, as Chavez-Rodriguez failed to disclose these losses, or alternatively, that she does not have a protected property interest in these benefits.  See Motion to Strike at 6, 8; Reply at 10. The Court need not address the first argument Defendants make, because the Court concludes that Chavez-Rodriguez does not have a independent protected property interest in her sick leave or other leave benefits.

Tenth Circuit precedent indicates that incidental losses are not independently protected property for due-process purposes.  In Workman v. Jordan, the Tenth Circuit held that a sheriff's department captain who was reinstated with lost pay could not claim a deprivation of property based on psychological care costs and lost pension and savings funds.  See id., 32 F.3d at 480 n.4.  The Sheriff of Weld County, Colorado, had terminated Workman for sexual harassment, which Workman appealed through county grievance procedures, eventually winning reinstatement as a captain and full back pay.  See id. at 477-78.   Workman asserted a due-process violation for the termination and for procedural defects in the post-termination hearing, both of which the Tenth Circuit denied, but also alleged that he had been deprived of property "because the grievance proceeding caused emotional trauma, for which his lack of an employer-sponsored health plan did not cover the psychological care costs, and caused depletion of his savings and pension funds because of living expenses, attorney's fees, and costs."  Id. at 480 n.4.  The Tenth Circuit summarily rejected this last claim, stating that "incidental losses do not give rise to an independent protected property interest."  Id.  The Defendants urge that the Court consider Chavez-Rodriguez' lost leave time to be an incidental loss under Workman v. Jordan.  See Reply at 10.

The brevity of the Tenth Circuit's rejection of Workman's losses makes it difficult to

determine precisely the limits of the incidental-losses rule, but the Court concludes that Chavez-Rodriguez' lost leave time would fall within its scope. The losses alleged by Workman and the losses alleged by Chavez-Rodriguez are not identical.  Workman alleged losses as a result of the grievance procedures, but the property he lost was funds in pension and savings accounts.  In contrast, Chavez-Rodriguez, while also asserting a loss resulting from grievance procedures, is asserting a loss in property directly associated with her job – leave benefits.  This distinction, however, does not bring Chavez-Rodriguez out from under the incidental-losses rule.  Although it is not clear, the pension fund mentioned in Workman v. Jordan was likely a pension fund associated with Workman's job at the sheriff's department.

Moreover, although characterizing the incidental losses as not being a "protected property interest," Workman v. Jordan, 32 F.3d at 480 n. 4, the Tenth Circuit's reasoning seems more directed at the process alleged to have resulted in a deprivation rather than the nature of the property. That process is virtually identical.  Chavez-Rodriguez argues that she was forced to use leave time to keep her income as a result of the grievance proceedings.  That scenario is what the Tenth Circuit found unpersuasive in Workman v. Jordan.  There is also an indication that Chavez-Rodriguez voluntarily took leave time while the grievance process continued – to the extent that is the case, it could not amount to a deprivation because it was a voluntary action on her part.  The Court, however, also reads Chavez-Rodriguez' arguments as alleging that the transfer caused her emotional trauma, forcing her to take sick leave.  While the reason for the leave would be slightly different in this interpretation – the transfer rather than the grievance proceeding – the Court does not see that as being a material difference.  The case for not finding an independent property interest is even stronger here than in Workman v. Jordan.  Workman was terminated outright despite having a protected interest in continued employment. His grievance proceeding resulted from an actual

deprivation of a protected property interest.  Here, the Court has held that Chavez-Rodriguez did not have a protected interest in the particular position she was going to be transferred from.  It would be a departure from the holding in Workman v. Jordan to find that a loss incurred from trauma suffered from what was not a deprivation of a property interest violated due process, when the Tenth Circuit had found no such violation resulting from trauma suffered as a result of proceedings arising out of a deprivation of a property interest.  Ultimately, there are some minor differences between the situation Chavez-Rodriguez was in and the circumstances of Workman v. Jordan, but the differences are immaterial.  Any losses of leave time that Chavez-Rodriguez incurred because of the proposed transfer and the subsequent grievance proceedings were incidental losses that are not independently protected property interests, particularly as the underlying main interest – her occupation of the specific position of Director of Senior Services – is not constitutionally protected.[5]

## II.   EVEN IF CHAVEZ-RODRIGUEZ HAD ANY PROTECTED PROPERTY INTERESTS AT ISSUE, THE DEFENDANTS WOULD BE ENTITLED TO SUMMARY JUDGMENT.

Although the Court holds that Chavez-Rodriguez has not asserted any constitutionally protected property interests, and thus cannot show a due-process violation, the Court will nonetheless briefly address the remaining arguments the parties raise.  Ultimately, the Court finds that there are alternative grounds upon which the Court could grant at least partial summary judgment in the Defendants' favor.[6]

_____

[5] The United States Court of Appeals for the Seventh Circuit has adopted the Workman v. Jordan rule in a narrow context.  The Seventh Circuit held that there is no independent property interest in expenses incurred as a result of administrative proceedings.  See Powell v. Fujimoto, 119 Fed.Appx. 803, 806 (7th Cir. 2004).

[6] Additionally, even if a due process violation occurred here – either substantive or procedural – the individual Defendants might be entitled to qualified immunity.  Officials may raise the defense of qualified immunity so long "as their conduct does not violate clearly established

First, even if Chavez-Rodriguez had a protected property interest, she cannot show a procedural due-process violation. Although she was removed from her position temporarily and there is evidence of irregularities in the City's handling of the proposed transfer, it is undisputed that she was returned to her former position and continues to this day to be Santa Fe's Director of Senior Services. Her deprivation was at worst temporary and the Tenth Circuit has held that reinstatement with pay precludes a finding of a due-process violation. See Workman v. Jordan, 32 F.3d at 479. Chavez-Rodriguez takes issue with this principle, arguing that the Defendants might be able to assert mitigation of damages because of the Workman v. Jordan rule, but that they cannot argue "no harm, no foul," and thereby erase a constitutional violation. Tr. at 126:20-127:8 (O'Friel). This line of reasoning, however, is unavailing given the Tenth Circuit precedent. The grievance procedures did precisely what they were supposed to do – resolve a personnel dispute without resort to litigation. Chavez-Rodriguez is effectively seeking double relief. She cannot premise a due-process violation on a successful grievance.[7]

Second, there is insufficient evidence in the record to hold the City liable for any due-process

---

statutory or constitutional rights which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. at 818. There are no cases directly on point regarding the asserted property interests here. Even if the Court's interpretation of the relevant law is incorrect, the Court has not seem anything to indicate that clearly established law dictates the Court finding that Chavez-Rodriguez had a protected property interest or that she was not afforded due process. At best for Chavez-Rodriguez, whether an employee has a protected interest in her particular position and in her leave benefits are complex questions that precedent has not obviously decided in her favor. Accordingly, the Defendants may be entitled to qualified immunity. Nevertheless, because the Court has found that there was no constitutional violation, the Court need not decide the second prong of the qualified-immunity test.

[7] Her used sick leave would, however, if it was a protected property interest, likely be something for which Chavez-Rodriguez could potentially show a due-process violation.

violation.[8]   Respondeat superior liability is not available against a municipal entity.  Instead, Chavez-Rodriguez must show that a policy or practice of the City, or a decision of the City's final policy-making body, was responsible for her losses.  See Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691 (1978)("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); Pembaur v. City of Cincinnati, 475 U.S. 469, 481 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."); Simmons v. Uintah Health Care Special Dist., 506 F.3d 1281, 1285 (10th Cir. 2007).  The Court does not find sufficient evidence in the record demonstrating that a policy or practice of the City was responsible for Chavez-Rodriguez being transferred.  There is no indication of a policy or practice of using transfers to retaliate against employees, and while high-level officials are alleged to have been involved in retaliation, the final decision-making authority on personnel matters is the City Manager, as stated in the Santa Fe City Code, while the transfer rule in § 4.71(A) of the Personnel Rules requires the consent of the City Manager.  See Pembaur v. City of Cincinnati, 475 U.S. 469 at 483 (holding that decision-making authority is determined by reference to state law).  The City Manager did not remove Chavez-Rodriguez from her position.  The record does not contain sufficient evidence upon which a rational jury could find the City of Santa Fe liable for the actions of its officers.

---

[8] The Defendants raised this argument in their reply, and not in their original motion.  Given that the Court has held two hearings on this and related motions, and allowed extensive argument, and that the Court primarily grants summary judgment on other grounds, the Court does not believe that considering this argument prejudices Chavez-Rodriguez.

### III.   CHAVEZ-RODRIGUEZ HAS NOT SHOWN A SUBSTANTIVE DUE-PROCESS VIOLATION.

Chavez-Rodriguez also cannot show a substantive due-process violation.  The primary disagreement between the parties on this issue is what the appropriate standard is.  The Defendants advocate for the shock-the-conscience standard, see Motion at 13; Chavez-Rodriguez maintains that the proper standard is arbitrary or irrational, see Response at 17.  The Defendants are correct.

The substantive due-process standard differs depending on whether the alleged violator is legislative or executive.  See County of Sacramento v. Lewis, 523 U.S. at 846-47.  Arbitrary or irrational is potentially the proper standard for legislative action, but the shock-the-conscience standard applies to executive action, which is what is at issue here, as the alleged violators are the City of Santa Fe and several city officials.  See id.  Chavez-Rodriguez cites Darr v. Town of Telluride, Colorado, 495 F.3d 1243 (10th Cir. 2007), for the proposition that an arbitrary or irrational termination of public employment violates substantive due process.  The Tenth Circuit stated in that case that "[a] public employee with a property interest in continued employment has a substantive-due-process right not to be terminated for arbitrary or capricious reasons." Id. at 1257.  The Tenth Circuit also noted, however, that there was "a potential dispute over whether the shock-the-conscience test applies to all due process violations" that it did not need to address because the Town of Telluride's conduct did not violate any of the potential standards.  Id. at 1258 n.5.  This Court believes that the shock-the-conscience test is the appropriate standard for all executive conduct.  The Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. at 846 (quoting Collins v. City of Harker Heights, Texas, 503 U.S. 115, 129 (1992)).  The phrase "arbitrary or capricious" is thus rather misleading, because executive conduct

must actually shock the conscience to be arbitrary or capricious.  See County of Sacramento v. Lewis, 523 U.S. at 846; id. at 861 (Scalia, J., concurring)(noting that majority opinion made shocks-the-conscience test "the measure of arbitrariness when what is at issue is executive, rather than legislative, action"); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 529 (10th Cir. 1998)(noting "some indication that the 'shocks the conscience' standard and the 'arbitrariness' standard are used interchangeably").  Chavez-Rodriguez does not seem to argue that the shock-the-conscience standard could be met here, and the Court does not see anything in the record egregious enough to qualify as shocking to the judicial conscience.

**IT IS ORDERED** that Defendants' Motion and Memorandum in Support Thereof for Partial Summary Judgment on Count II (Due Process Rights Under the United States and New Mexico Constitutions) and for Qualified Immunity is granted in part.[9]

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Daniel J. O'Friel
Pierre Levy
O'Friel and Levy, P.C.
Santa Fe, New Mexico

    _Attorneys for the Plaintiff_

_____

[9] The Court dismisses Chavez-Rodriguez' federal due-process claims.  The Court will address the portions of the motion directed at her state due-process claims if necessary after the Court decides the motions to dismiss her First Amendment claims.

Steve French
Robyn B. Hoffman
Robert W. Becker
Michelle Blake
French & Associates, PC
Albuquerque, New Mexico

*Attorneys for the Defendants*