IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA CHAVEZ-RODRIGUEZ,

        Plaintiff,

vs.                                                                  No. CIV 07-0633 JB/DJS

CITY OF SANTA FE, MAYOR DAVID COSS,
in His Official and Individual Capacity,
COUNCILOR KAREN HELDMEYER,
in Her Official and Individual Capacity,
JOHN B. "JACK" HIATT in His Official
and Individual Capacity,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Reconsideration of Court Order [Doc. 234] that Plaintiff's Speech with the Speaker of the House of Representatives is Protected as a Matter of Law and Memorandum in Support, filed December 4, 2008 (Doc. 241)("Motion")(brackets in original). The Court held a hearing on February 12, 2009. The primary issue is whether the Court should reconsider its ruling that Plaintiff Patricia Chavez-Rodriguez' conversation with Ben Lujan, the Speaker of the New Mexico House of Representatives, at a banquet is protected speech and instead conclude that this conversation is not protected under the First Amendment because it was pursuant to Chavez-Rodriguez' official duties as Director of Senior Services for Santa Fe. The Court will grant the motion in part and will revisit its holding. Because the Court concludes that its initial opinion was correct, however, the Court will continue to hold that Chavez-Rodriguez' speech with Lujan at the banquet is constitutionally protected speech under Garcetti v. Ceballos, 547 U.S. 410 (2006).

**FACTUAL BACKGROUND**

The Court has already discussed some of the facts surrounding the banquet at which Chavez-Rodriguez and Lujan spoke together.  See Memorandum Opinion and Order at 6-7, entered October 17, 2008 (Doc. 234)("MOO").  The Defendants have offered additional evidence regarding the events at the banquet.  In particular, the Defendants note that the banquet in question was an annual event to honor senior volunteers which Chavez-Rodriguez was responsible for organizing.  See Appendix to Motion, Statement of Undisputed Material Facts ¶¶ 1-3, at 1 (Doc. 241-2)("SUMF").  Chavez-Rodriguez attended the banquet as Mistress of Ceremonies, during her work hours.  See id. ¶¶ 4, 8, at 2.  Chavez-Rodriguez invited nine state legislators, including Lujan, to the banquet and sat at the head table with Lujan.  See id. ¶¶ 9, 11, at 2.

During the banquet, Chavez-Rodriguez and Lujan spoke.  The Court's earlier opinion quoted from a deposition excerpt that Chavez-Rodriguez supplied discussing this conversation.  The Defendants contend that the excerpt Chavez-Rodriguez gave the Court does not include her full description of the conversation, which the Defendants contend demonstrates that her speech was pursuant to her official duties.  The entirety of the description is:

> . . . I remember this vividly.  It was -- I'm thinking it was April 25th, at a volunteer banquet.  The speaker of the house, Speaker Ben Lujan, was in attendance with Mr. Ramos at this banquet.  In fact, the two were keynote speakers.
>
> And if my memory serves me correctly, that evening was a Council meeting. And Mayor Delgado was also at this annual volunteer banquet, with 500 to 600 volunteers present.
>
> And while we're having lunch during the banquet, the Speaker of the House asked me, out of concern, if -- he said, Patricia, how are you doing? Fine. I've known the Speaker for many, many years. We are family friends. And he asked me, is everything okay?  Is there anything I can help you with?
>
> And I said, well, you know, Mr. Speaker, I'm really, really, really concerned because -- I'm worried that the program is in jeopardy of being dismantled as it --

>you know, as it existed for over 25 years. I'm really, really, really worried about the funding. I'm worried that I'm having to reduce staff hours. I'm worried that money has been cut from the food line item.
>
>And he told me, if there's anything, anything I can do, I would be more than happy to do so. He said, I am very, very concerned about these programs. He said, I was originally -- I was one of the original founders, if you will, of senior programs. Seniors are true and dear to my heart. They are my constituents. And their well-being is of the utmost importance. That's why I'm here today at this banquet. And if I need to, Patricia, I'll talk to the Mayor. I will talk to Mike, who was the City Manager at the time, to see if there's anything that I can do.

Exhibit 1 to Motion, Vol. I., Deposition of Patricia Chavez-Rodriguez at 82:1-83:11 (taken March 4, 2008)(Doc. 241-3).

Based upon the affidavit of Chavez-Rodriguez' predecessor as Director of Senior Services, Rita Maes, the Defendants maintain that a Director of Senior Services' job includes meeting with New Mexico legislators, including the Speaker of the House, to lobby for funding and that the Senior Volunteer Appreciation Banquet is an appropriate forum for the Division Director to report on the Division of Senior Services. See Exhibit 4 to Motion, Affidavit of Rita Maes ¶¶ 10-11, at 2 (executed November 10, 2008)(Doc. 241-3) (stating that Maes has used banquets as an occasion to give status reports and to lobby). The Defendants also maintain that Chavez-Rodriguez has met with Lujan before as part of her official duties to discuss funding, see id. ¶ 12, at 2-3 (discussing funding meeting that included Lujan and Chavez-Rodriguez after Maes left the Division), and that talking with the Speaker of the House is "the type of activity that the Director of Senior Services is paid to do," id. ¶ 13, at 3. Chavez-Rodriguez counters with the affidavit of Asenath Kepler, a former City Manager in Santa Fe. Kepler states that, to her knowledge, independently contacting legislators about City of Santa Fe business was not part of the regular duties of a division head. See Exhibit 4 to Response, Affidavit of Asenath Kepler ¶ 4, at 1 (executed February 4, 2009)(Doc. 269-2).

**PROCEDURAL BACKGROUND**

This case has seen a flurry of motions, including motions from both sides, regarding the First Amendment issues this case raises. Because of the overlapping nature of many of the issues, the Court consolidated its ruling on five motions into one memorandum opinion and order. See MOO at 1-2. In particular, the Court grouped the Plaintiff's Motion and Memorandum for Partial Summary Judgment that Her Speech was on a Matter of Public Concern and Protected Speech as a Matter of Law, filed June 17, 2008 (Doc. 127), and the Defendants' Motion and Memorandum in Support Thereof for Judgment on the Pleadings on Count I of Plaintiff's Complaint (First Amendment Rights Under the United States and New Mexico Constitutions), filed July 31, 2008 (Doc. 139). The Court considered the evidence and arguments offered on both of these motions, and determined that the First Amendment protected Chavez-Rodriguez' speech with Lujan at the banquet. See MOO at 39-43.

The Defendants now move the Court to reconsider its decision that this conversation at the banquet with Lujan is protected speech as a matter of law. The Defendants maintain that the manner in which the Court decided that Chavez-Rodriguez' speech was protected meant that they did not have the opportunity to provide evidence or argument on the relevant factors. They contend that, once all the evidence regarding the banquet and Chavez-Rodriguez' talk with Lujan is considered, it becomes clear that Chavez-Rodriguez was speaking with Lujan pursuant to her official duties as Director of Senior Services. Chavez-Rodriguez disagrees, and asserts that the Court's initial analysis and conclusion were correct and further argues that Chavez-Rodriguez was discussing allegations of misconduct with Lujan.

**ANALYSIS**

The Court will grant the Defendants' motion to the limited extent of considering their

evidence and arguments, and deciding whether the Court should change its previous ruling. Many of the new facts, however, are facts which the Court assumed in its earlier holding. Neither these new facts, nor any of the arguments the Defendants raise, persuade the Court that it was wrong in the conclusion it reached the first time. Accordingly, the Court will continue to find that Chavez-Rodriguez' speech with Lujan at the banquet is protected speech as a matter of law and will not change its earlier holding.

**I.    WHETHER A PUBLIC EMPLOYEE'S SPEECH IS PURSUANT TO HER OFFICIAL DUTIES IS ULTIMATELY A QUESTION OF LAW, BUT A QUESTION OF LAW THAT MAY INVOLVE DISPUTED FACTUAL ISSUES.**

One threshold issue the Court should address is the standard that the Court should apply in determining whether Chavez-Rodriguez' speech was pursuant to her duties. The Defendants correctly contend that the question whether a government employee's speech is pursuant to her official duties under the Garcetti/Pickering analysis is a legal question. See Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d 1192, 1203 (10th Cir. 2007). The United States Court of Appeals for the Tenth Circuit has stated: "Garcetti made clear that the first step is to determine whether the employee speaks pursuant to his official duties." Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d at 1204. Whether an employee's speech is pursuant to her official duties involves many factual issues. While the Court should not submit the ultimate issue on such a question of law to the jury, there may be times where disputed issues of fact require the fact-finder to resolve certain underlying factual issues. See Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir. 1989)(holding that court should not have submitted question whether speech was protected to the jury as it was a question of law).

In this case, however, the factual issues are undisputed, with one exception. The Defendants assert, relying on Maes' affidavit, that part of the Director of Senior Services' duties involving

lobbying individual legislators, while Chavez-Rodriguez, relying on Kepler's affidavit, maintains that division directors are not supposed to independently contact legislators. This dispute, however, is ultimately not relevant. While Chavez-Rodriguez devotes a significant portion of her response to the Defendants' motion to arguing that Chavez-Rodriguez was reporting misconduct and going outside her chain of command, the Court rests its analysis here on the same grounds that supported its earlier opinion. The Court will not, on a motion to reconsider, expand the scope of inquiry and delve into legal issues that do not need to be resolved. The Court's earlier analysis is sound. The only disputed factual issues are not determinative to that analysis.

## II.     THE COURT WILL RECONSIDER ITS EARLIER MEMORANDUM OPINION AND ORDER.

District court judges have the discretion to revise any interlocutory orders before final judgment is entered. See Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988). The Court has not entered any final judgments in this case, and therefore retains the ability to amend any previous opinions and orders. The Defendants submit that the manner in which the dispositive briefing proceeded, and the manner in which the Court considered matters outside the Defendants' Motion for Judgment on the Pleadings on Count I of Plaintiff's Complaint (First Amended Rights under the United States and New Mexico Constitutions)(Doc. 139), did not allow the Defendants to submit facts and arguments to refute the Court's analysis in characterizing Chavez-Rodriguez' speech with Lujan as that of a private citizen. The Court does not fully agree. Nevertheless, the procedural rules, especially rule 1 of the Federal Rules of Civil Procedure, which requires the just, speedy, and inexpensive determination of this action, warrant that the Court exercise its discretion to review and, if appropriate, revise its interlocutory order. The Court will consider the evidence and arguments that the Defendants present to ensure that the Court has fully and fairly considered

the Defendants' position.

### III. THE COURT WILL NOT CHANGE ITS DECISION THAT CHAVEZ-RODRIGUEZ' SPEECH WITH LUJAN AT THE BANQUET IS PROTECTED SPEECH.

The Defendants ground their request for reconsideration on five main arguments: (i) that the full account of Chavez-Rodriguez' conversation reveals that she was conferring with a funding source and not speaking as a private citizen; (ii) that Chavez-Rodriguez was responsible for the banquet as part of her duties as Director of Senior Services; (iii) that Lujan being a family friend should not convert official speech into private speech; (iv) that who initiated the conversation is not determinative for distinguishing official speech from private speech; and (v) that an employee's communications need not be with someone having direct oversight over the employee to constitute official speech. The Court largely agrees with the basic points the Defendants make, but does not agree with the conclusions they draw from them. The Defendants discuss various factors that are part of the mix in the fact-intensive, context-dependent analysis of what constitutes official speech under Garcetti v. Ceballos. The balance of relevant factors, however, still leads the Court to the conclusion that Chavez-Rodriguez' speech was protected.

#### A. CHAVEZ-RODRIGUEZ WAS CONFERRING WITH A FUNDING SOURCE, BUT WAS NOT TALKING WITH LUJAN AS A FUNDING SOURCE.

The Defendants maintain that the Court had only a partial description of Chavez-Rodriguez' talk with Lujan at the banquet and that the remainder of the discussion shows that she was speaking as the Director of Senior Services with one of her funding sources. The full description of the discussion does not change the Court's view of the conversation. It remains the case that Lujan, a family friend, asked Chavez-Rodriguez how she was doing, prompting Chavez-Rodriguez to tell Lujan about her problems with her job. In response, Lujan then expressed his commitment to senior

services and offered to help however he could.  Lujan's response is the new information that the Defendants have provided, but the Court does not view the response as materially altering the character of the conversation.

The Court was aware when it wrote its opinion that the New Mexico House of Representatives is a source of funding for the Division of Senior Services.  See MOO at 40 (noting that Defendants "emphasize that Lujan is a member of the State Legislature, a funding source for the Division of Senior Services")(internal quotation marks omitted).  As the Court has pointed out, Lujan's being a member of the Legislature, however, does not mean that anything Chavez-Rodriguez might say to Lujan that touched on her employment is unprotected speech.  See Garcetti v. Ceballos, 547 U.S. at 421 (noting that communications concerning the subject matter of the employee's job are not necessarily unprotected because "[t]he First Amendment protects some expressions related to the speaker's job").  Garcetti v. Ceballos is not so formalistic.  Lujan's being a member of one of the bodies that provides funding to the Division of Senior Services is certainly a relevant factor in the analysis, but it is not outcome determinative.

What is outcome determinative is whether Chavez-Rodriguez was acting pursuant to her official duties.  Even considering the additional information about the conversation the Defendants provide, Chavez-Rodriguez was responding to a general question from a family friend.  She responded by discussing her problems at work.  Lujan may then have responded by offering help in a manner that seems to invoke his official position as Speaker of the House.  Nothing in Chavez-Rodriguez' description of the encounter, however, indicates that she asked for such help, lobbied for such help, requested funding, or did anything else that could reasonably be construed as seeking the assistance that Lujan offered.  The extra information the Defendants provide does not convince

the Court that Chavez-Rodriguez did not speak to Lujan as a private citizen.[1]

### B. CHAVEZ-RODRIGUEZ WAS RESPONSIBLE FOR THE BANQUET, BUT THIS FACT DOES NOT TRANSFORM HER CONVERSATION WITH LUJAN INTO OFFICIAL SPEECH.

The Defendants point out that the banquet was an official banquet held in appreciation of senior volunteers, which Chavez-Rodriguez attended as Mistress of Ceremonies. The Defendants also emphasize that banquet is an appropriate occasion for reporting on the Division of Senior Services and lobbying for funding. The various facts about the banquet that the Defendants provide, however, do not change the Court's mind about its holding.

The scenario the Defendants lay out is largely the scenario that the Court assumed in its earlier opinion. See MOO at 40-41 (assuming that Chavez-Rodriguez attended banquet in an official capacity). The Court continues to believe that "[c]onsidering the banquet to be a job-related function which Chavez-Rodriguez attended in an official capacity does not automatically make all her speech there unprotected." Id. at 41. The circumstances in which speech takes place are undoubtedly important -- speech is generally more likely to be official speech when it takes place during work hours and at a work site and generally more likely to be private speech when it takes place at home, after hours -- but official speech may occur in non-official setting, and private speech may take place in an official setting. See Garcetti v. Ceballos, 547 U.S. at 420 ("That Ceballos

---

[1] The Defendants also seem to argue that, "[i]f the conversation merely concerned a friend 'divulging . . . her troubles' to another friend," then the speech would be more like a matter of personal interest and not a matter of public concern, and thus not entitled to First Amendment protection. Motion at 8 (quoting MOO at 42). The Defendants have never contested the public concern aspect of Chavez-Rodriguez' speech and raising such an issue is not fairly a reconsideration of the Court's earlier order. Moreover, while Chavez-Rodriguez was divulging her troubles to a family friend -- and thus not acting in an official role -- what she was divulging touched on matters of public concern -- the funding of government programs. The Defendants seem to be arguing, to some extent at least, that the speech of public employees is either pursuant to their duties or else not a matter of public concern. That is clearly not the state of the law.

expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work."). The Defendants' focus is too broad and fails to concentrate on the particular conversation at issue. Chavez-Rodriguez was at an official banquet as an employee. It may well have been proper for her to make reports or lobby officials. Some of her speech there would likely be unprotected. The welcome address the banquet program indicates she was to give to the gathering, for instance, would probably be official speech. Her conversation with Lujan, however, was of a private nature. The circumstances of that particular conversation distinguish it from the surrounding events.

At the hearing, the Defendants also argued that Chavez-Rodriguez would not have been sitting next to Lujan were it not for her position as Director of Senior Services. This point, however, does not make her conversation the product of her job. An employee chatting with another employee in the office is only able to have that conversation because both are working in the same office. Their jobs are necessary, in a logical sense, for the speech to occur. Restriction of government employee speech, however, "reflects the exercise of employer control over what the employer itself has commissioned or created." Garcetti v. Ceballos, 547 U.S. at 422. The key question is not whether the government job allowed for the speech, but whether the "speech . . . owes its existence to a public employee's professional responsibilities." Id. at 421.

### C. LUJAN'S RELATIONSHIP WITH CHAVEZ-RODRIGUEZ IS AN IMPORTANT FACTOR IN THIS PARTICULAR SITUATION.

The Defendants state they "have been unable to locate any case authority which holds that the fact that a public employee is friends with or has a personal relationship with the party to whom the purported protected speech is communicated has any bearing upon the analysis of the content of the speech." Motion at 10. It is not clear whether the Defendants are challenging only the use

of friendship in interpreting the precise content of the speech, as opposed to the context of the speech. The Defendants proceed, however, to discuss a number of contextual factors, so the Court will assume that the Defendants are making the broader challenge that friendship is not a relevant factor in the Garcetti v. Ceballos analysis. The Court disagrees with the Defendants' assessment of the importance of Lujan's relationship with Chavez-Rodriguez' family. In the particular circumstances here, that factor is important.

The Court is not necessarily surprised that the Defendants "have been unable to locate any case authority" involving a public employee's friendships. The Garcetti v. Ceballos test involves a fact-intensive analysis and was ushered in less than three years ago. That no other court has discussed the precise facts at issue here is both unsurprising and largely irrelevant to the determination whether there was a constitutional violation.

The Defendants contend that Chavez-Rodriguez "has given no facts to indicate that sitting at the head table at this event next to a State legislator in a forum designed to discuss program issues for Senior Services is 'the kind of activity engaged in by citizens who do not work for the government." Motion at 11 (quoting Garcetti v. Ceballos, 547 U.S. at 423). As the Court has held, that the setting was work-related is not dispositive. Moreover, this contention assumes the correctness of the point that the Defendants urge the Court to reach. The contention fails to account for Lujan also being a family friend. Discussing troubles with a family friend is "the kind of activity engaged in by citizens who do not work for the government." Garcetti v. Ceballos, 547 U.S. at 423. The question is whether Chavez-Rodriguez was in fact speaking to Lujan as a family friend.

The Defendants also raise an analogy: what if, in Garcetti v. Ceballos, District Attorney Gil Garcetti and Deputy District Attorney John Ceballos had been golfing buddies? The Defendants contend that this relationship would not have changed the result of the case. The Court is inclined

to agree. If Garcetti had been a longtime friend of Ceballos, that fact would probably not have transformed his submission of a formal memorandum to Ceballos into private speech. The analogy, however, is off base. The question is not whether the existence of a friendship is some alchemical process that transmutes otherwise official speech into private speech. The question is: was the act done as a friend or as an official? A more apt analogy would be Garcetti sitting next to his friend Ceballos at an annual banquet to honor the "Prosecutor of the Year," when Ceballos asks Garcetti why he was looking so glum, to which Garcetti says that he was having a hard time at work. That analogy presents a different scenario than the one the Defendants draw. The friendship provides important context to understanding the character of the speech.

### D. WHO INITIATED A CONVERSATION AND HOW THE CONVERSATION WAS INITIATED IS A RELEVANT FACTOR IN THIS SITUATION.

The Defendants argue that the Tenth Circuit has never identified who initiated conversation as being a relevant factor. Again, whether a particular factor has been previously identified is largely not relevant to determining whether there has been a constitutional violation. If a district court were bound to apply -- particularly in a contextual analysis such as is required here -- only those particular factors that the Tenth Circuit has previously addressed, it would be virtually impossible for the court to do its job.

The Defendants maintain that Hesse v. Town of Jackson, Wyoming, 541 F.3d 1240 (10th Cir. 2008), found that an employee's speech was unprotected even though the employee did not initiate the conversation. There is no inconsistency between the Court's earlier ruling and Hesse v. Town of Jackson, Wyoming. The Court did not identify Lujan's initiation of the conversation as a dispositive factor, and Hesse v. Town of Jackson, Wyoming did not proclaim that reliance on who initiates a conversation is an irrelevant or impermissible consideration. Lujan's initiating the

conversation was one of several factors relevant to the Court's analysis. The context of the speech made this factor relevant and favored finding the speech to be protected. In another context, who began a conversation may be irrelevant, or may be relevant and favor finding the speech to be unprotected.

In Hesse v. Town of Jackson, Wyoming, the town administrator approached the town's contract attorney about the lawyer's argument with the town clerk earlier in the day. The Tenth Circuit held that the lawyer's "argument with the town administrator occurred in the course of his official employment responsibilities based on the undisputed facts concerning the context in which the conversation arose." Id. at 1249. In Hesse v. Town of Jackson, Wyoming, the town administrator began the discussion, but it was clear that the administrator was confronting the lawyer about his discussion with another town employee. The town administrator's conduct plainly marked out the conversation and ensuing argument as involving the attorney's duties as an employee. In this case, Lujan's initiation of the conversation with a basic question about how Chavez-Rodriguez was doing indicates that the conversation is more general and not any kind of official communication.

Moreover, the Court focused on who started the conversation because Chavez-Rodriguez' job description specifically involved "reporting" to funding sources, which implies an active effort. See MOO at 41-42. The Court found, and continues to find, that Lujan's initiation of the conversation was one factor indicating that Chavez-Rodriguez was not seeking to report to Lujan. Additionally, Lujan's initiation of the conversation sets the stage for the tenor of the speech. Lujan asked Chavez-Rodriguez how she was doing. If Chavez-Rodriguez had started talking to Lujan about the Division of Senior Services, the character of the conversation would have been different.

-13-

### E. THE DEGREE OF OVERSIGHT THAT THE NEW MEXICO HOUSE OF REPRESENTATIVES EXERCISES OVER CHAVEZ-RODRIGUEZ' EMPLOYMENT IS A RELEVANT FACTOR.

The Defendants contend that Lujan need not have been in direct oversight over Chavez-Rodriguez for her speech to have been unprotected. The Court agrees and has never held otherwise. Nonetheless, the nature of the official relationship between Chavez-Rodriguez and Lujan is important. The Defendants also maintain that "speech may be pursuant to an official's duties even if it deals with activities that the employee is not expressly required to perform." Motion at 13 (quoting Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d at 1203). Again, the Court has never held otherwise, but nonetheless does not believe that Chavez-Rodriguez was acting in an official capacity when speaking with Lujan.

A public employee need not be speaking to a supervisor or even to a fellow public employee for her speech to be pursuant to her official duties. When the only official duty that an employee has with respect to another person or entity is a duty of reporting, however, the nature of that relationship can become important. The ultimate test that must be kept in mind is discerning whether speech is pursuant to an employee's duties. When it is not readily apparent whether speech fits within that category or not, courts and lawyers must resort to more indirect factors. As a general proposition, it is much more likely that a conversation between an employee and a direct supervisor involving job-related topics is within the employee's official duties because the supervisor-employee relationship covers a broad variety of conduct. When the individual with whom the employee talks, however, is a member of a funding source with no direct oversight and the employee's only official duty involving the individual is reporting to the funding source, it is much more likely, generally, that speech falls outside the employee's official duties. Because of its generality, this factor is a minor one in the overall mix, and the Court did not treat it as dispositive. Indeed, the Court

mentioned this fact in only a single sentence in its opinion.  See MOO at 42.  The factor is only one more minor factor adding weight to the Court's conclusion.

The Defendants also note that Chavez-Rodriguez could have been acting pursuant to her official duties even if they are not express duties.  In particular, the Defendants focus on the Court's finding that Chavez-Rodriguez was not seeking to report to Lujan.  It is true that "speech may be pursuant to an official's duties even if it deals with activities that the employee is not expressly required to perform."  Brammer-Hoelter v. Twin Peaks Charter Academy, 492 F.3d at 1203.  "At the same time, not all speech that occurs at work is made pursuant to an employee's official duties."  Id. at 1204.  The Court principally found that the conversation was "more like a normal conversation between two people who have known each other a long time about the troubles one of them was having and not as an official communication by a civil servant."  MOO at 40.  While Chavez-Rodriguez' express duties are important, the Court's understanding of the conversation primarily rests on the conversation being, essentially, the kind of normal conversation one would expect friends or acquaintances to have.  That understanding does not depend upon how broadly or narrowly Chavez-Rodriguez' reporting duties are defined.  Having normal conversations is not one of her official functions.

In sum, the Court sees no sound reason to change its earlier ruling.  The Defendants further flesh out the circumstances of the banquet, but many of these circumstances are ones that the Court assumed were true for the purposes of reaching its decision.  The new evidence that the Defendants provide is ultimately not persuasive.  Whether a public employee's speech is the product of her employment is a highly context-driven inquiry.  Here, the relevant facts are not in dispute, even if the conclusions to be drawn from them are.  Viewing the totality of all the factors at play, the Court continues to believe that Chavez-Rodriguez' conversation with Lujan at the banquet was essentially

that of a person divulging her troubles to a friend and not that of a government official acting pursuant to her duties. Her speech was therefore entitled to protection under the First Amendment, and the Court will not modify its earlier opinion so holding.

**IT IS ORDERED** that the Defendants' Motion for Reconsideration of Court Order [Doc. 234] that Plaintiff's Speech with the Speaker of the House of Representatives is Protected as a Matter of Law is granted in part and denied in part. The Court will consider the new evidence and argument offered and revisit its prior ruling, but will not modify its earlier decision.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel J. O'Friel
Pierre Levy
O'Friel and Levy, P.C.
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*

Steve French
Robyn B. Hoffman
Robert W. Becker
French & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants*